# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|                                        |     |                          |
| -------------------------------------- | --- | ------------------------ |
| NICHOLE HOLZUM, et al.,                | )   |                          |
|                                        | )   |                          |
| Plaintiffs,                            | )   | No. 4:17-CV-2275 RLW     |
|                                        | )   |                          |
| v.                                     | )   |                          |
|                                        | )   |                          |
| WAL-MART STORES, INC., et al.,         | )   |                          |
|                                        | )   |                          |
| Defendants.                            | )   |                          |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion to Remand (ECF No. 18). This matter is fully briefed and ready for disposition.

## LEGAL STANDARD

Removal statutes are strictly construed, and any doubts about the correctness of removal are resolved in favor of state court jurisdiction and remand. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993); *Manning v. Wal-Mart Stores East, Inc.*, 304 F. Supp. 2d 1146, 1148 (E.D. Mo. 2004) (citing *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997)). The party seeking removal and opposing remand has the burden of establishing jurisdiction. *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator*, 561 F.3d 904, 912 (8th Cir. 2009); *City of Univ. City, Missouri v. AT & T Wireless Services, Inc.*, 229 F. Supp. 2d 927, 929 (E.D. Mo. 2002).

## BACKGROUND

This case is a putative class action by Plaintiffs Nichole Holzum, Katheryn Schlott, and Marilyn Rogers (collectively, "Plaintiffs") against Defendants Wal-Mart Stores, Inc., Wal-

Mart.com USA, LLC, and Wal-Mart Stores East 1, LP (collectively referred to as "Defendants" or "Wal-Mart"). Plaintiffs brought this action on behalf of themselves and all persons who purchased retail food items with a "Nutrition Facts" label at any Wal-Mart store located in Missouri, or online from Wal-Mart for Missouri delivery, that were charged sales tax monies at the 4.225% state sales tax rate rather than the reduced 1.225% state sales tax rate for qualifying food. Plaintiffs seek damages for the overcollection of state sales tax. Plaintiffs seek injunctive relief, damages and costs for violations of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §407.010, et seq., and damages for unjust enrichment, negligence, and money had and received.

Wal-Mart removed this case from the Circuit Court of St. Louis County to the U.S. District Court for the Eastern District of Missouri on August 18, 2017. (ECF No. 1). Wal-Mart asserts original jurisdiction pursuant to 28 U.S.C. §1332(a)(1) and the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d).

Plaintiffs move for this Court to remand this action based upon principles of comity and federalism, lack of jurisdiction under the Tax Injunction Act ("TIA"), and because the amount in controversy does not exceed $5 million in the aggregate. (ECF No. 19). The Court decides this Motion based upon the amount in controversy and, therefore, decides this action without addressing the principles of comity, federalism, and the Tax Injunction Act.

## DISCUSSION

### I.    AMOUNT IN CONTROVERSY

#### A.  CAFA

CAFA "confers federal jurisdiction over class actions where, among other things, 1) there is minimal diversity; 2) the proposed class contains at least 100 members; and 3) the amount in

controversy is at least $5 million in the aggregate." *Plubell v. Merck & Co.*, 434 F.3d 1070, 1071 (8th Cir.2006) (citing 28 U.S.C. § 1332(d)); *Raskas v. Johnson & Johnson*, 719 F.3d 884, 886–87 (8th Cir. 2013). "Although CAFA expanded federal jurisdiction over class actions, it did not alter the general rule that the party seeking to remove a case to federal court bears the burden of establishing federal jurisdiction." *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010) (citing *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 151 (3d Cir.2009); *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 48 (1st Cir.2009); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir.2007); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006)). "[A] party seeking to remove under CAFA must establish the amount in controversy by a preponderance of the evidence...." *Bell v. Hershey Co.*, 557 F.3d 953, 958 (8th Cir. 2009); *Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013). Under the preponderance standard, the jurisdictional fact "is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude" that they are. *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 944 (8th Cir.2012) (quoting *Bell*, 557 F.3d at 959) (emphasis in original). "Such an inquiry is fact intensive." *Jarrett v. Panasonic Corp. of N. Am.*, 934 F. Supp. 2d 1020, 1023 (E.D. Ark. 2013) (citing *Hartis*, 694 F.3d at 944). The removing party's burden of describing how the controversy exceeds $5 million constitutes a pleading requirement, not a demand for proof. *Hartis*, 694 F.3d at 944–945 (quotation marks and citation omitted).

Plaintiffs contend the $5 million amount in controversy element of CAFA jurisdiction has not been satisfied. 28 U.S.C. §1332(d)(2).[1] Plaintiffs propose a class defined as "[a]ll persons

---

[1] 28 U.S.C. §1332(d)(2) provides: The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—(A) any member of a class of plaintiffs is a citizen of a State different from any defendant;(B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any

and entities who, during the five-year period before filing of this Petition, purchased retail food items with a 'Nutritional Facts' label at any Wal-Mart store located in Missouri, or online from Wal-Mart for Missouri delivery, that were charged sales tax monies at the 4.225% state sales tax rate rather than the reduced 1.225% state sales tax rate for qualifying food." (Petition, ¶38).

Damages, attorneys' fees and punitive damages may all be considered when determining whether a class action meets the $5 million threshold. *See Jarrett v. Panasonic Corp. of N. Am.*, 934 F. Supp. 2d 1020, 1025 (E.D. Ark. 2013) (actual, punitive damages, and attorneys' fees can be considered for the amount in controversy).

As part of its opposition to Plaintiffs' Motion to Remand, Wal-Mart provides an affidavit from Nicholas Haverkamp, Senior Manager, Sales Tax Manager, stating that there are actual damages in the amount of $232,392.67 in over-collected sales tax from September 20, 2014 through June 28, 2017. (ECF No. 28 at 4). Wal-Mart further notes that the MMPA permits recovery of attorneys' fees. (ECF No. 28 (citing Mo. Rev. Stat. §407.025.1)). Wal-Mart cites to *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 432 (Mo. 2013), where the Missouri Supreme Court approved of an attorney fee award in an MMPA class action claim in the amount of $6,174,640 from an actual damages award of $125,261.[2] Extrapolating from *Berry*, Defendants argue that attorneys' fees alone could exceed $6,000,000. (ECF No. 28 at 5). Finally, Defendants rely on *Lewellen v. Franklin*, 441 S.W.3d 136, 139 (Mo. 2014), where the Missouri Supreme Court upheld a jury aware of punitive damages of $1 million on an individual's fraudulent misrepresentation and unlawful merchandising practices under the

member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

[2] *Berry* involved a class action where certain Volkswagen vehicles contained defective window regulators. 397 S.W.3d at 428.

MMPA. Based on *Lewellen,* Defendants argue that punitive damages of at least $1,000,000 are reasonably at issue. (ECF No. 28 at 6). Defendants argue that they have met their burden of demonstrating that a fact finder "might legally conclude" that damages in excess of $5,000,000 is recoverable. Thereafter, Defendants contend that the burden shifts to Plaintiff to establish "to a legal certainty" that the amount in controversy is not met. Defendants assert that Plaintiffs cannot overcome this burden based upon the evidence presented. (ECF No. 28 at 6).

As an initial matter, the Court is confused by the change in numbers relied upon by Defendants. In their removal papers, Wal-Mart swore that "the total sales during the Putative Class Period of Muscle Milk, Pure Protein, and ReliOn by [Defendants] between April 2014 and June 2017 in Missouri totaled $1,312,041.63" (ECF No. 1-6), which makes the amount of damages only $39,361.25. (ECF No. 19 at 11). In contrast, Wal-Mart, through Haverkamp's affidavit, now claims that "the total sales revenue of 430 identified products sold by Wal-Mart in-store, similar to those purchased by Plaintiffs … which were taxed at 4.225% in Missouri, during the period of September 20, 2014 through June 28, 2017 was $7,746,422.27." (ECF No. 28-1, ¶7). Wal-Mart failed to provide an explanation for this dramatic 490% increase in the sale of products with "Nutrition Facts" labels that were taxed at the 4.225% tax rate. As noted by Plaintiffs, this unexplained change in mathematics indicates that Wal-Mart's numbers are unreliable. (ECF No. 32 at 14). Nevertheless, even with Wal-Mart's revised calculations, the Court still finds that this case does not meet the $5 million threshold for CAFA jurisdiction. That is, 3% of $7,746,422.27 equals $232,392.67, which is significantly less than $5 million dollars.

Moreover, the rest of Wal-Mart's purported calculations to reach the $5 million dollar mark are based upon speculation, assumptions and false comparisons. Wal-Mart claims that it

reaches the $5 million dollar threshold based upon attorneys' fees and punitive damages awards that have been awarded in other MMPA cases. The Court, however, finds that the cases cited by Wal-Mart are irrelevant to the facts in this case and not representative of the majority of MMPA awards in Missouri. For example, *Berry* is an outlier case "in that the fee award is forty-nine times the amount of Class recovery." *Berry*, 397 S.W.3d at 429. The attorneys' fee award in *Berry* was disproportionately high because the Court applied a multiplier. The *Berry* court acknowledged that "an enhancement to the lodestar amount may be awarded in rare and exceptional circumstances." *Berry*, 397 S.W.3d at 430. Wal-Mart has provided no evidence that this case would qualify for an enhancement as a rare and exceptional case. Wal-Mart has evinced nothing to demonstrate that this case involves a novel problem or that it would require exceptional skill and experience to try this case. *See Berry*, 397 S.W.3d at 432. Therefore, the Court finds that the *Berry* case provides no support for such an extreme and overreaching attorneys' fee award in this case.

Likewise, the Court does not reasonably conclude that *Lewellen* supports federal CAFA jurisdiction. In *Lewellen,* a 77 year old widow was misled through a bait-and-switch scheme of false financial promises by a car dealership. As a result of said scheme, the widow's car was repossessed, yet she was forced to continue to make monthly payments. The plaintiff also provided testimony from two other persons who were similarly misled by the car dealership and evidence of 73 complaints filed with the Missouri attorney general and numerous other complaints filed with the Kansas attorney general. *Lewellen*, 441 S.W.3d at 141. The jury awarded actual damages of $25,000 on two counts against the defendants for fraudulent misrepresentation and unlawful merchandising practices. The jury further "awarded punitive damages against Mr. Franklin for $1 million, creating a 40:1 ratio between punitive damages to

actual damages. The final punitive damages award against National was $539,050, which yields a 22:1 ratio." *Id.*, at 147. The defendants challenged that punitive damage award, but it was ultimately upheld based upon the reprehensible and deceitful conduct of the defendants by preying on the unsophisticated and vulnerable people, such as the plaintiff.[3] The plaintiff alleged extreme damages warranting the application of punitive damages including, "Lewellen suffered damages from the repossession of her Lincoln, the damage to her good credit record after her unpaid account with Harris Bank was turned over to a collection agency, the suit brought by Harris Bank for defaulting on her loan, the stress of being unable to make her loan payments, and Ms. Lewellen's fear that she would go to jail." *Id.*, at 147.

---

[3] The Missouri Supreme Court specifically outlined why the defendants' conduct in this case was especially egregious:

> Mr. Franklin's and National's conduct was ... reprehensible. The persons targeted by the $49–per–month vehicles are financially vulnerable, low-income persons. Ms. Lewellen was one such financially vulnerable person; she was an unemployed, 77–year old widow whose only source of income was $920 of social security benefits per month. Additionally, Mr. Franklin and National engaged in trickery, malice or deceit by using deceptive and misleading advertisements. They lured in customers like Ms. Lewellen with frequently aired advertisements promising customers that they could purchase cars for only $49 per month but had them sign documents obligating them to pay larger monthly sums. For example, Ms. Lewellen was ultimately contractually obligated to pay $379 per month, or $4,548 annually. National employees repeatedly assured Ms. Lewellen that she would have to pay only $49 per month, or $588 annually, for five years and that National would send her a check to cover the difference in her car payments. Contrary to their representations, National employees had Ms. Lewellen sign a document that stated "$49 first six months." And National only sent a check sufficient to cover the difference for nine months, leaving Ms. Lewellen contractually obligated to make car payments she could not afford.

*Lewellen*, 441 S.W.3d at 146.

Here, Plaintiffs allege that the "conduct of Wal-Mart was malicious, corrupt, and intentional and/or reckless to a degree sufficient to support of punitive damages against Wal-Mart." (Petition, ECF No. 3, ¶64). At this stage of the litigation, Plaintiffs have not alleged specific reprehensible conduct on the scale of what occurred in *Lewellen*. Plaintiffs' damages are purely economic damages and there have been no allegations that this alleged scheme targeted a particularly vulnerable group or that Wal-Mart's actions had particularly egregious repercussions. *Cf. Lewellen*, 441 S.W.3d at 147 (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("While 'few awards exceeding a single digit ratio between punitive damages and compensatory damages ... will satisfy due process,' greater ratios may 'comport with due process where a particularly egregious act has resulted in only a small amount of economic damages.'")).

Based upon the foregoing, the Court holds that Wal-Mart has not met its burden that removal was proper. Wal-Mart has not established that a fact-finder might legally conclude that the amount in controversy in this case would exceed $5 Million. The actual damages at issue are at most around two hundred thousand dollars, in aggregate. Wal-Mart has not shown any special or extraordinary circumstances that warrant an attorneys' fee or punitive damages award in the millions of dollars. Therefore, the Court holds that this Court lacks jurisdiction under CAFA because Wal-Mart has not shown to a legal certainty that the amount in controversy threshold can be met.

## B. 75,000 amount under 28 U.S.C. 1332(a)(1)

Federal court diversity jurisdiction of state law claims requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants. 28 U.S.C. § 1332(a); *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). Given that the

parties agree complete diversity of the citizenship exists between the parties, the main issue that this case presents is whether the amount in controversy exceeds $75,000. *OnePoint Sols., LLC*, 486 F.3d at 347.

An individual class members' distinct claims for actual damages may not be aggregated to satisfy the $75,000 amount-in-controversy requirement for diversity jurisdiction. *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 765 (8th Cir. 2001). Moreover, the class members' distinct claims for punitive damages and statutory attorney fees cannot be aggregated for purposes of amount-in-controversy requirement. *Crawford*, 267 F.3d 760.[4]

Plaintiffs argue that this Court does not have original subject matter jurisdiction. *See* ECF No. 32 at 15.[5] In the Notice of Removal, Wal-Mart asserts that diversity jurisdiction under 28 U.S.C. §1332(a)(1) exists and that the $75,000 has been met based upon expected attorneys' fees and punitive damages. (ECF No. 1, ¶¶19-24). Plaintiffs assert that Wal-Mart has failed to demonstrate that the amount in controversy exceeds $75,000 for any single plaintiff. Wal-Mart, in contrast, contends that this Court can aggregate anticipated punitive damages and fee awards to determine whether the statutory minimum amount has been met for diversity jurisdiction. ECF No. 35 at 3 (citing *Blake v. Career Educ. Corp.*, No. 4:08 CV 00821 ERW, 2008 WL 4151795, at *3 (E.D. Mo. Sept. 4, 2008); *Conner v. Minnesota Life Ins. Co.*, No. 6:15-CV-

---

[4] See *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 765 (8th Cir. 2001) (quoting *Gilman v. BHC Securities, Inc.,* 104 F.3d 1418, 1430 (2d Cir.1997) ("When class members have separate claims for punitive damages, those claims are not the kind of 'single, undivided res' that classically constitutes a common fund, even though the members may eventually have to share a final award of punitive damages."); *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 766 (8th Cir. 2001) ("the attorney fees at stake in this case must be divided between the members of the class for purposes of determining the amount in controversy").and

[5] The Court gave Wal-Mart the opportunity to brief the issue of whether this Court had diversity jurisdiction under 42 U.S.C. §1332(a)(1). (ECF No. 34).

03277-MDH, 2015 WL 13404335, at *1 (W.D. Mo. Sept. 2, 2015); *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 348 (8th Cir. 2007)).

The Court, however, notes that the cases cited by Wal-Mart do not stand for the proposition that class action plaintiffs can aggregate their punitive damages and attorneys' fees. *See Blake*, 2008 WL 4151795, at *3; *Conner*, 2015 WL 13404335, at *1; *OnePoint Sols., LLC*, 486 F.3d at 348. Rather, the cases explicitly state that at least one plaintiff's damages must meet the statutory damages amount:

> While the actual damages of each individual Plaintiff cannot be combined to meet the amount in controversy requirement, the punitive damages requested by each Plaintiff may be included to help that Plaintiff meet the individual requirement. In fact, in order to meet the amount in controversy requirement, only one of the Plaintiffs would need to have a legitimate claim for punitive damages in an amount that would raise his or her total damages to an amount greater than $75,000.

*Blake*, 2008 WL 4151795, at *3. Wal-Mart has failed to identify one plaintiff whose damages would meet the $75,000 threshold.

Moreover, the existence of the required amount in controversy, including the punitive damages and attorney fees alleged to reach the required amount, must be supported by competent proof. *OnePoint Sols., LLC*, 486 F.3d at 349 (citing *Larkin v. Brown*, 41 F.3d 387, 388-89 (8th Cir. 1994)). This Court finds that Wal-Mart fails to provide any evidence to support its punitive damages claim. Wal-Mart notes that "[e]vidence of verdicts in cases alleging similar causes of action may satisfy the burden of showing the amount in controversy." (ECF No. 1, ¶20 (citing *Rodgers v. Wolfe*, No. 4:05CV01600ERW, 2006 WL 335716, at *3 (E.D. Mo. Feb. 14, 2006); *Conner v. Minnesota Life Ins. Co.*, No. 6:15-CV-03277-MDH, 2015 WL 13404335, at *1 (W.D.

Mo. Sept. 2, 2015)).[6]  In *Conner*, however, defendant presented evidence in an accidental death benefits case that the "benefits and penalties total $64,622.10" and that a "reasonable estimate of statutory attorney's fees totals $19,386.63." *Conner*, 2015 WL 13404335, at *1.  Here, Wal-Mart cites to no similar damage award for an individual plaintiff.  Wal-Mart cites generally to "examples" to indicate the "possibility that a punitive damage award in excess of $75,000 could occur in this case. (ECF No. 1, ¶21).  While the cases cited are also MMPA cases, Wal-Mart fails to demonstrate that those cases are in any way factually similar to the case here and how this case could warrant such a large punitive damage award based upon such a small actual damage amount.  Under Wal-Mart's reasoning, any MMPA could meet the $75,000 threshold. Clearly, this cannot meet the competent proof requirement to support removal.

Similarly, Wal-Mart cites to a few Missouri MMPA cases with attorneys' fee awards that exceeded the $75,000 jurisdictional amount. (ECF No. 1, ¶22).  One of the cases cited is *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 429 (Mo. 2013), which, as discussed above, the Court does not believe is a comparable case to this case.  Moreover, Wal-Mart's only basis for asserting that the attorneys' fee award could exceed $75,000 is based upon its calculation that Plaintiffs' counsel would need to expend "only 301" hours on this case to exceed the jurisdictional minimum of $75,000. (ECF No. 1, ¶22(a)). Given that this case involves a straightforward legal issue regarding the amount of tax charged, the Court finds no reason (and Wal-Mart has not provided any basis) for why such a large number of attorney hours would be necessary.

---

[6] Wal-Mart incorporates by reference its Notice of Removal in its Supplemental Brief as to Subject Matter Jurisdiction (ECF No. 35 at 4, n.2).

Accordingly, the Court holds that Wal-Mart has failed to demonstrate by competent evidence that this cause of action meets the $75,000 threshold for diversity removal. The Court remands this action to the Circuit Court of the County of St. Louis, State of Missouri.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Plaintiffs' Motion to Remand (ECF No. 18) is **GRANTED**. This matter shall be remanded to the Twenty-First Circuit of Missouri in County of St. Louis, Missouri for further proceedings. An order of remand accompanies this Order.

An appropriate Order of Remand is filed herewith.

Dated this 10th day of August, 2018.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**